# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00660-CR

**Raegan D. Ashcraft, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW OF BURNET COUNTY
### NO. M27281, HONORABLE W. R. SAVAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of her motion to suppress evidence, appellant Raegan D. Ashcraft pleaded no contest to the misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code § 49.04. Punishment was assessed at 90 days in jail and a $2,000 fine, but the trial court suspended imposition of the sentence and placed Ashcraft on probation for fourteen months and probated the fine in the amount of $1,250. In three issues on appeal, Ashcraft asserts that the trial court abused its discretion in denying her motion to suppress on the following grounds: (1) the search-warrant affidavit used to obtain a specimen of Ashcraft's blood did not set out sufficient facts to establish that she was operating a motor vehicle in a public place; (2) the affidavit did not set out sufficient facts to establish the time at which Ashcraft was found operating a motor vehicle; and (3) the affidavit was not properly "sworn" as required by law. We will affirm the judgment.

## BACKGROUND

At the suppression hearing, the trial court heard evidence that on the night of May 14, 2011, Trooper Nathan McWherter of the Texas Department of Public Safety was on patrol when he observed a vehicle speeding in Burnet County near Highway 281. After stopping the vehicle and conversing with the driver, later identified as Ashcraft, McWherter became suspicious that Ashcraft was intoxicated. After observing Ashcraft's performance on field sobriety tests, McWherter arrested Ashcraft for driving while intoxicated and transported her to the Llano Memorial Hospital for a blood draw. Because Ashcraft refused consent to have her blood drawn, McWherter was required to submit an affidavit for a search warrant in order to obtain a specimen of Ashcraft's blood. The affidavit, which we discuss in more detail below as it is relevant to Ashcraft's issues on appeal, was signed by McWherter in the presence of Officer Holly Kline of the Llano Police Department. Based on the contents of the affidavit, a warrant was issued and Ashcraft's blood was drawn.

The issues at the suppression hearing relevant to this appeal were the sufficiency of the facts contained within the affidavit to establish probable cause for the blood draw and whether the affidavit complied with the statutory requirement that the affidavit be "sworn." *See* Tex. Code Crim. Proc. art. 18.01(b), (c). After considering the evidence presented, specifically the testimony of McWherter, the search-warrant affidavit, and the search warrant itself, and hearing argument from the parties, the trial court denied the motion to suppress. The trial court subsequently made the following findings of fact and conclusions of law:

FINDINGS OF FACT

. . . .

2

1.      The traffic stop occurred [at] approximately 11:05 p.m. and the search warrant was issued by Judge Dan Mills, 424th District Court, at 12:28 a.m., May 15, 2011.

2.      Pursuant to said warrant, a blood specimen was drawn at 12:49 a.m., May 15, 2011, and subsequently relinquished to the arresting officer.

3.      The arresting officer signed and executed the Affidavit for Search Warrant in the physical presence of a peace officer, Holly Kline, Llano Police Department, a person qualified to administer oaths and execute jurats. The jurat was duly executed by said peace officer and the completed affidavit was forwarded to Judge Mills by fax.

CONCLUSIONS OF LAW

1.      The search warrant signed by Judge Mills was amply supported by the affidavit supplied by the affiant /arresting officer. The information contained in the affidavit and reasonable inferences made therefrom set forth substantial facts establishing probable cause that evidence of intoxication would be obtained by obtaining a specimen of Defendant's blood.

2.      The blood specimen seized pursuant to the warrant was properly admitted against Defendant. The arrest of Defendant and the transportation of Defendant to an adjacent county for purposes of execution of a valid blood search warrant did not constitute a violation of Defendant's rights under the 4th Amendment, U.S. Constitution nor under Article 1, Section 10, Texas Constitution.

3.      The requirement that the search warrant affidavit be sworn to before a person authorized to administer oaths was met in this case. While there is some evidence that the officer administering the oath did not actually verbalize the recitation of an oath, the affiant signed the affidavit in the presence of the subscribing officer and with full understanding of its implications. This is sufficient to comply with the requirements of Article 18.01.

After her motion to suppress was denied, Ashcraft pleaded no contest to driving while intoxicated and was placed on probation as noted above. This appeal followed.

3

# STANDARD OF REVIEW

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We are to apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)). When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011) (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). If the trial court makes findings of fact, as it did here, we determine whether the evidence supports those findings. *Id*. We then review the trial court's legal rulings de novo unless the findings are dispositive. *Id*. "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (quoting *Dixon*, 206 S.W.3d at 590).

# ANALYSIS

**Sufficiency of facts contained within the affidavit**

In her first issue, Ashcraft asserts that the search-warrant affidavit does not set out sufficient facts to establish that she was operating a motor vehicle in a public place. In her second

issue, Ashcraft similarly asserts that the affidavit did not set out sufficient facts to establish the time at which she was operating a motor vehicle.

"No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." Tex. Code Crim. Proc. art. 18.01(b). "A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." *Id*. The sworn affidavit must set forth "sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched." *Id*. art. 18.01(c).

In this case, the affidavit must contain sufficient facts to establish probable cause that Ashcraft had committed the offense of driving while intoxicated and that evidence of Ashcraft's intoxication would be found in her blood. *See Farhat v. State*, 337 S.W.3d 302, 307 (Tex. App.—Fort Worth 2011, pet. ref'd). Therefore, two of the facts essential to the determination of probable cause here were: (1) whether Ashcraft was operating a motor vehicle in a public place, *see* Tex. Penal Code § 49.04(a); and (2) the approximate time at which Ashcraft was operating a motor vehicle while allegedly intoxicated, so that the magistrate could determine the likelihood that evidence of intoxication would still be present in Ashcraft's blood at the time her blood was to be drawn. *See Crider v. State*, 352 S.W.3d 704, 709-12 (Tex. Crim. App. 2011); *State v. Jordan*, 342 S.W.3d 565, 571-72 (Tex. Crim. App. 2011).

5

Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Jordan*, 342 S.W.3d at 568-69. "It is a 'flexible and nondemanding' standard." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (quoting George E. Dix & Robert O. Dawson, 40 Texas Practice—Criminal Practice and Procedure § 5.03 at 292 (2d ed. 2001)). "The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within its four corners." *Jordan*, 342 S.W.3d at 369.

When reviewing a magistrate's decision to issue a warrant, trial and appellate courts are to apply "a highly deferential standard in keeping with the constitutional preference for a warrant." *Rodriguez*, 232 S.W.3d at 61; *see Swearingen v. State*, 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004) (explaining that de novo review of probable-cause determination, although appropriate in other contexts, is inappropriate in review of magistrate's decision to issue warrant); *see also Gates*, 462 U.S. at 236 ("We have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"). "Thus, when an appellate court reviews an issuing magistrate's determination, that court should interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences." *Rodriguez*, 232 S.W.3d at 61. "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Id.* "As long as the magistrate had a substantial

basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

We first address Ashcraft's claim that the affidavit did not set out sufficient facts to establish that she was operating a motor vehicle in a public place. A "public place" is defined as "any place to which the public or a substantial group of the public has access and includes . . . streets, highways." Tex. Penal Code § 1.07(40). Here, Trooper McWherter never specified in the affidavit the location where he had observed Ashcraft operating a motor vehicle.[1] However, McWherter did state in the affidavit that he observed Ashcraft "speeding" at the rate of "74 miles per hour in a 65 miles per hour zone." From these facts, the magistrate could have reasonably inferred that Ashcraft had been operating a motor vehicle on a street or highway where speed limits are regulated, even to the extent of having speed-limit "zones," and that this would, in turn, be a "public place." Accordingly, we cannot conclude that the trial court abused its discretion in denying the motion to suppress on the ground that the magistrate had a substantial basis for concluding that Ashcraft was operating a motor vehicle in a public place. We overrule Ashcraft's first issue.

We next address Ashcraft's assertion that the affidavit did not set out specific facts to establish the time at which she was operating a motor vehicle. "[A]n affidavit 'is inadequate if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that event upon which the probable cause was founded was not so remote as to render it ineffective.'" *Crider*, 352 S.W.3d at 707 (quoting *Garza v. State*, 48 S.W.2d 625, 627-28 (Tex. Crim. App. 1932) (op. on reh'g)). In other words, "there must be sufficient facts within the affidavit to support a

---

[1] Although McWherter testified at the suppression hearing that Ashcraft was stopped near Highway 281, this information was not included in the affidavit.

probable-cause finding that the evidence is still available and in the same location." *Id*. In a driving-while-intoxicated case, the evidence sought is alcohol or some other intoxicant, and the location of that evidence is in the individual's bloodstream. *See id*. Therefore, "[t]he magistrate need[s] to know when the [appellant] was stopped in order to determine the probability that evidence of an offense would be found in the [appellant's] blood at the time the warrant issued." *Jordan*, 342 S.W.3d at 570.

"No hard-and-fast rule sets the outer limit of time between stopping an apparently intoxicated driver and the existence of probable cause that evidence of intoxication will still be found within that person's blood."[2] *Crider*, 352 S.W.3d at 707-08. However, "[a]lcohol in a person's bloodstream disappears quite rapidly, thus the facts cited to support probable cause to search for alcohol in a DWI suspect's bloodstream become stale quite rapidly." *Id*. at 708. Consequently, "[t]he longer the time gap between the initial stop and the eventual signing of the warrant, the less likely that evidence of intoxication would still be found in appellant's blood." *Id*. at 710. In order for a reviewing court to ensure that the magistrate had a substantial basis for concluding that probable cause existed to draw the suspect's blood, the affidavit must contain some information that "suggests what time gap existed between the last moment of driving and the moment the magistrate signed the warrant." *See id*. However, in our review, we must consider the totality of the circumstances described in the affidavit and give "due regard to all reasonable inferences that can

---

[2] The court of criminal appeals has concluded that it is unreasonable to expect that alcohol may still be found in a person's blood over 24 hours after a traffic stop, *see Crider v. State*, 352 S.W.3d 704, 710 (Tex. Crim. App. 2011), but that, depending on the severity of the symptoms of intoxication, it is not unreasonable to expect that alcohol may still be found in a person's blood within four hours after a traffic stop. *See State v. Jordan*, 342 S.W.3d 565, 571-72 (Tex. Crim. App. 2011).

be drawn from the stated facts" within the four corners of the affidavit. *Id*. at 711. For example, in *State v. Jordan*, the arresting officer did not specify the time at which he had observed the defendant operating a motor vehicle. However, he did indicate on the affidavit that the offense had occurred on June 6, 2008, which was the same date on which the affidavit was sworn. 342 S.W.3d at 567-68. Also on that date, the magistrate issued a search warrant for blood at 3:54 a.m. *Id*. Thus, considering the totality of the circumstances and drawing all reasonable inferences from the stated facts within the affidavit, the reviewing court could determine that the defendant was stopped at sometime after midnight on June 6, 2008, which was less than four hours prior to the warrant being issued. *Id*. at 571. "Given the symptoms of intoxication described in the affidavit," the court of criminal appeals held "that the magistrate had a substantial basis to determine that evidence of intoxication would probably be found in the appellee's blood within four hours of the stop." *Id*. at 572.

This case is similar to *Jordan*. Here, the affidavit does not indicate at what time Trooper McWherter observed Ashcraft operating a motor vehicle. However, the affidavit does specify that McWherter "made contact" with Ashcraft on May 14, 2011, "at approximately 11:05 p.m." The affidavit was sworn on May 15, 2011, which indicates that it was sworn at some time after midnight. The warrant itself was issued by the magistrate at 12:28 a.m. on May 15, 2011. Thus, less than two hours had elapsed between the time McWherter "made contact" with Ashcraft and the time a warrant was issued to draw Ashcraft's blood.[3] Given the symptoms of intoxication

---

[3] As Ashcraft observes in her brief, McWherter acknowledged at the suppression hearing that 11:05 p.m. was actually the time he had placed Ashcraft under arrest and that the traffic stop had occurred at some time prior to that. However, on cross-examination, McWherter agreed with the prosecutor that, even assuming there was some delay between the initial traffic stop and the arrest,

described in the affidavit, which included a "strong" odor of alcohol on Ashcraft's breath, bloodshot eyes, swaying, and the exhibition of several indicators of intoxication during her attempts to perform field sobriety tests, we cannot conclude that the trial court abused its discretion in denying the motion to suppress on the ground that the magistrate had a substantial basis to determine that evidence of intoxication would likely be found in the Ashcraft's blood within two hours of the stop. *See id*. at 572. We overrule Ashcraft's second issue.

**Requirement that affidavit be "sworn"**

In her third issue, Ashcraft asserts that the affidavit was not "sworn" as required by statute. *See* Tex. Code Crim. Proc. art. 18.01(b). Specifically, Ashcraft contends that the peace officer who signed the affidavit, Holly Kline, did not place McWherter under oath and did not have him swear to the truth of the matters contained in the affidavit. Ashcraft further contends that Kline was not qualified to administer oaths.

We first address the latter contention. An oath may be made by a peace officer if the oath is administered when the officer is engaged in the performance of the officer's duties and the administration of the oath relates to the officer's duties. Tex. Gov't Code § 602.002(17). Here, McWherter testified that he "called the Llano County dispatch and asked them to send a police officer over to the hospital for the purpose of signing an affidavit." Kline arrived at the hospital in response to that request. When asked if he knew whether Kline had as part of her official duties the duty to administer oaths, McWherter testified, "I am under the impression that we all can do that.

the time between the initial traffic stop and the warrant being issued was approximately two hours. And, in response to questioning from the trial court, McWherter also testified that the delay between the initial traffic stop and the subsequent arrest was approximately fifteen minutes.

10

When we go to the jail there's never a notary at the jail in Burnet County. We sign each other's [probable cause] affidavits all the time. I believe that's a common, lawful thing to do." McWherter further testified that, at the time Kline arrived at the hospital, Kline was in uniform, on duty, and on routine patrol. Additionally, on the affidavit itself, Kline indicated that she was a peace officer. Considering the above evidence in its totality, we conclude that the trial court's finding that Kline was qualified to administer oaths is "reasonably supported by the record" and is not "outside the zone of reasonable disagreement." We cannot conclude that the trial court abused its discretion in denying the motion to suppress on this ground.

We next address Ashcraft's contention that the affidavit was not "sworn." It is well established that article 18.01(b) requires a "sworn affidavit." *See Clay v. State*, 391 S.W.3d 94, 98 (Tex. Crim. App. 2013); *Smith v. State*, 207 S.W.3d 787, 789-90 (Tex. Crim. App. 2006); *Greer v. State*, 437 S.W.2d 558, 562 (Tex. Crim. App. 1969); *Vaughn v. State*, 177 S.W.2d 59, 61-62 (Tex. Crim. App. 1944) (op. on reh'g). To qualify as a sworn affidavit, the declaration of facts contained within the affidavit must be confirmed by oath. *See Vaughn*, 177 S.W.2d at 61. "The purpose of this oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *Smith*, 207 S.W.3d at 790. In the context of a search-warrant affidavit, "an oath is both constitutionally and statutorily indispensable." *Clay*, 391 S.W.3d at 97.

At the suppression hearing, the following testimony was elicited from McWherter as to whether Officer Kline had formally placed him under oath at the time he signed the affidavit:

Q    When [Kline] arrived at the hospital describe as best you can remember exactly what was done.

11

A       When she arrived at the hospital?

Q       Yes.

A       I let her look at the affidavit. I let her witness me signing it and then I dated it and she signed that she witnessed my signature.

Q       Was there any conversation at all between the two of you?

A       I don't recall. I would assume there probably was.

Q       You don't recall any statements or questions by her to you about the signature?

A       No, sir, I don't remember.

Q       And as far as you know all she was doing was witnessing that you had signed that; is that correct?

A       Yes, sir.

Q       She did not at any time place you under oath; did she? In other words, ask you to raise your right hand and swear to tell the truth, the whole truth and nothing but the truth so help you God; did she?

A       No, she did not.

Q       And she did not ask you if you were swearing to the truth of each and every item or statement in that affidavit; did she?

A       She did not ask that, no.

Thus, it appears from the record that, consistent with the trial court's findings, "the officer administering the oath did not actually verbalize the recitation of an oath." However, as the trial court observed, that does not end the inquiry. If there is other evidence in the record that proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate or other officer qualified to administer oaths, then the affidavit is valid. *See Smith*, 207 S.W.3d

12

at 792. "Our Code of Criminal Procedure prescribes no form of oath necessary to be administered to a witness, or one attesting, under oath, any fact in a criminal proceeding." *Vaughn v. State*, 177 S.W.2d 59, 60 (Tex. Crim. App. 1943). Instead, the test to determine if an oath has been made is whether the declarant's statement would subject the person to a charge of perjury. *See id.*; *see also Smith*, 207 S.W.3d at 790 n.13 ("An oath is a matter of substance, not form" and "creat[es] liability for perjury or false swearing for those who abuse the warrant process by giving false and fraudulent information.") (quoting *State v. Tye*, 248 Wis. 2d 530, 636 N.W.2d 473, 478 (Wis. 2001)).

Here, the affidavit begins with the following statement: "The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations." The affidavit further provides, "Affiant is sending a true and correct copy of this Affidavit for Search Warrant via facsimile/email to: Judge Mills," below which appears McWherter's signature. The affidavit concludes with the following statement: "SWORN TO AND SUBSCRIBED before me on the 15th day of May 2011," below which appears Officer Kline's signature. Although this would be a simpler case if McWherter had verbally recited the oath to Officer Kline, we nonetheless conclude that these statements and the accompanying signatures, when considered in their totality, support the trial court's finding that the affidavit, if later proven to be false, would subject McWherter to a charge of perjury. *See* Tex. Penal Code § 37.07(b); *Hardy v. State*, 213 S.W.3d 916, 917 (Tex. Crim. App. 2007); *see also Vaughn*, 177 S.W.2d at 60 ("In perjury cases, the rule is that there is a valid oath sufficient to form the basis of a charge of perjury when there is some form of an unequivocal and present act, in the presence of the officer authorized to administer the oath, whereby the affiant consciously takes on himself the obligation of an oath."). Accordingly, the trial court's conclusion that the affidavit in this case was "sworn" is "reasonably

13

supported by the record" and is not "outside the zone of reasonable disagreement." We cannot conclude that the trial court abused its discretion in denying the motion to suppress on this ground. We overrule Ashcraft's third issue.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   August 20, 2013

Do Not Publish

14