COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| ROBERT JACKSON CRIDER, II, | | No. 08-12-00332-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 5 |
| | § | |
| THE STATE OF TEXAS, | | of Collin County, Texas |
| | § | |
| Appellee. | | (TC# 005-84506-08) |
| | § | |

## **O P I N I O N**[1]

Robert Crider appeals the denial of a pretrial motion to suppress following his conviction for driving while intoxicated ("DWI"). In three issues, Appellant contends that the trial court erred in finding that Appellant failed to signal a turn after coming to a complete stop at a Y-shaped intersection, thereby granting a police officer probable cause to initiate a traffic stop. We affirm.

### BACKGROUND
### *Factual History*

The events at issue in this appeal took place at the confluence of three roads in Wylie, Texas, near the border of Dallas and Collin counties. When this intersection is viewed on a map oriented northward, the three roads form an upside-down Y-shape, with Vinson Road forming

---

[1] We review this case on transfer from the Fifth Court of Appeals in Dallas.

the left arm of the Y, County Line Road forming the right arm of the Y, and FM 544 forming the base of the Y. A traveler heading northeast on Vinson Road along the left-hand side of the Y must come to a complete stop at a stop sign located at the intersection. From there, the driver may elect to either go left onto FM 544 or turn right at about a 90-degree angle onto County Line Road.

Shortly before midnight on June 6, 2008, Appellant, an off-duty bicycle police officer with the Dallas Police Department, was travelling northeast-bound in a motor vehicle on Vinson Road along the left arm of the Y. What occurred next as Appellant approached the intersection and stopped at the stop sign is in dispute. Appellant testified that he put his arm out through the driver's side window as he approached the stop sign and made an appropriate hand signal indicating his intent to turn left at the intersection. Appellant maintained that he did not use his blinker to signal because as a bicyclist, he uses hand signals due to force of habit. He then traveled left onto FM 544 after stopping at the stop sign. When the patrol officer pulled him over and explained that he did not see Appellant use a turn signal, Appellant did not tell the police officer that he had actually used a hand signal, claiming that he did not want to argue with the officer because failure to signal a turn was a minor traffic infraction.

Sergeant Anthony Henderson of the Wylie Police Department, who witnessed Appellant approach the intersection from a vantage point 75 to 100 yards north of the intersection on FM 544, conceded that Appellant made a complete stop at the intersection, but testified at the suppression hearing that Appellant never signaled his intent to turn, either with a blinker or a hand signal. Sgt. Henderson admitted that his view of the 100-foot strip of roadway leading up to the stop sign was partially obstructed by trees, but insisted that he was able to view enough of the road to allow him to determine whether Appellant had committed a traffic offense. Sgt.

2

Henderson further testified that Appellant admitted that he failed to signal the turn. In describing the intersection, Sgt. Henderson stated that a driver who did not turn in either direction at the intersection but instead attempted to drive straight on the same path he had taken along Vinson Road "would drive off in the ditch" located opposite the stop sign.

Based on his observation, Sgt. Henderson initiated a traffic stop for failure to signal his intent to turn. Appellant failed a field sobriety test and exhibited several signs of intoxication. Sgt. Henderson arrested Appellant on suspicion of DWI.

### *Procedural History*

This appeal arises after Appellant's second trial in this matter. During the first trial, "[a] jury convicted appellant of driving while intoxicated after the trial judge denied his motion to suppress evidence obtained from a search warrant for blood." *Crider v. State*, 352 S.W.3d 704, 705 (Tex.Crim.App. 2011)(*Crider I*). The Dallas Court of Appeals affirmed his conviction, *id.*, but the Court of Criminal Appeals reversed, holding that the warrant authorizing a DWI blood draw was unsupported by probable cause because the officer's affidavit did not specify how much time had passed between the arrest and the warrant request. *Id.* at 710-11. On remand, the State retried Appellant for DWI (*Crider II*). At pretrial, Appellant again moved to suppress, this time on the basis that the police officer had no reasonable suspicion or probable cause justifying the initial traffic stop. The trial court denied Appellant's motion to suppress, and a jury later convicted him of DWI. This appeal followed.

### DISCUSSION

In three issues, Appellant challenges the trial court's denial of his motion to suppress the evidentiary fruits of Sgt. Henderson's traffic stop, contending that he was not required to use a signal at the intersection because he did not make a "turn" at the intersection, and, alternatively,

3

that the trial court erred by crediting Sgt. Henderson's testimony over his own on the question of signal usage. We address these issues in turn.

**Standard of Review**

"Before making a traffic stop, an officer must have reasonable suspicion that some crime was, or is about to be, committed." *Kelly v. State*, 413 S.W.3d 164, 169 (Tex.App.--Beaumont 2013, no pet.). "When an officer observes a driver commit a traffic offense, reasonable suspicion exists to justify stopping the driver." *Id*. at 170. Absent reasonable suspicion, a warrantless traffic stop is an unreasonable seizure in violation of the Fourth Amendment, and a defendant may move to suppress the evidentiary fruits of that stop. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex.Crim.App. 2011); *Bishop v. State*, 85 S.W.3d 819, 822 (Tex.Crim.App. 2002).

We review the trial court's suppression ruling under a bifurcated standard, assessing "a trial court's determination of historical facts" for abuse of discretion "and reviewing de novo the court's application of the law of search and seizure." *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). Here, the issue of whether a driver's particular movement constituted a "turn" requiring a signal under the Texas Transportation Code is a question of law we review de novo. *See Mahaffey v. State*, 316 S.W.3d 633, 637 (Tex.Crim.App. 2010). Whether a driver actually signaled, when required to do so, is a question of historical fact reviewed for abuse of discretion. *See Carmouche*, 10 S.W.3d at 327. "Appellate courts view the evidence in the light most favorable to the trial judge's ruling-whether he grants or denies the motion." *State v. Duran*, 396 S.W.3d 563, 571 (Tex.Crim.App. 2013). Although "we generally consider only evidence adduced at the suppression hearing" in reviewing the trial court's suppression ruling, we may properly consider relevant trial evidence where, as in this case, "the State raises the issue

at trial either without objection or with subsequent participation in the inquiry by the defense," as "the defendant has [then] made an election to re-open the evidence" and the parties effectively have chosen to re-litigate the suppression issue at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996); *see also Webb v. State*, 760 S.W.2d 263, 273 n.13 (Tex.Crim.App. 1988).[2]

### *Failure to Signal a Turn*

In Issue One, Appellant argues that his lateral movement at the Y-shaped intersection did not constitute a "turn" because he did not change direction at a 90-degree angle or move out of the direct course of traffic. In Issue Two, Appellant alternatively contends that if the movement did constitute a turn, no signal was required because his was the only vehicle on the road. We disagree with Appellant on both counts.

The Texas Transportation Code requires drivers to use either a hand signal or a vehicle's signal lights "to indicate an intention to turn, change lanes, or start from a parked position." TEX.TRANSP.CODE ANN. §§ 545.104(a), 545.106(a)(West 2011). A driver must give the signal continuously for a distance of at least 100 feet before turning. TEX.TRANSP.CODE ANN. § 545.104(b). The phrase "turn" is undefined in the Transportation Code and amenable to the traditional canons of statutory construction. *Mahaffey*, 316 S.W.3d at 638. In constructing Section 545.104(a), Appellant urges us to resort to the rule of lenity, which states that "criminal statutes outside the [P]enal [C]ode must be construed strictly, with any doubt resolved in favor of the accused." *State v. Johnson*, 219 S.W.3d 386, 388 (Tex.Crim.App. 2007); *see also Cuellar v. State*, 70 S.W.3d 815, 819 n.6 (Tex.Crim.App. 2002).

---

[2] Appellant asserts that we may also review the evidence from the *Crider I* suppression hearing in making our determination. Appellant cites no case law in support of that proposition, and in any event, the trial records from *Crider I* do not appear in the Court's case file and does not appear to have been designated as part of the record in this appeal. As such, we are limited to considering evidence in the record before us.

The rule of lenity applies only when a statute is ambiguous. *Johnson*, 219 S.W.3d at 388. However, the Court of Criminal Appeals has previously held that the word "turn" this provision of the Transportation Code is not ambiguous, but rather that it possesses the meaning assigned to it by "common usage." *Mahaffey*, 316 S.W.3d at 638. The Court further noted that although a driver need not "signal *any* movement that is not a perfectly straight trajectory[,]" *id*. at 640 [Emphasis added]:

> The word 'turn' is not a legal term of art—it has no 'acquired technical meaning.' 'Turn' has many dictionary meanings, but, in the context of driving, 'turn' means to change directions—to turn the vehicle from a direct course of the roadway. You either turn left, or you turn right out of the direct course or flow of normal traffic.

*Mahaffey*, 316 S.W.3d at 639.

We defer to the Court of Criminal Appeals' definition of "turn" as articulated in *Mahaffey*. In reviewing the evidence in the record in light of this definition, we believe that Appellant's motion constituted a "turn" under the Transportation Code. The record here indicates that the direct flow of traffic on Vinson Road appears to terminate at the stop sign, when the road essentially splits into FM 544 and County Line Road. Although the right turn from Vinson Road onto County Line Road is at a steeper angle than the turn from the same road onto FM 544, all three roads are "equally travelled roads," and because a ditch lies opposite the stop sign, a driver on Vinson Road stopped at the intersection stop sign must clearly make a choice: turn left or turn right. By definition, any rational movement Appellant made would have constituted a deviation from the direct flow of traffic because the direct flow of traffic terminated at the stop sign. We are unconvinced on the record presented that traffic from Vinson Road "merges" onto FM 544 so as to fall outside the definition of a turn. *Compare Mahaffey*, 316 S.W.3d at 643 (where roadblock forces traffic in right lane to merge with traffic in left lane, there

is no "turn" requiring a signal because driver never technically leaves the direct course of traffic on the altered roadway).

Appellant cites *Trahan v. State*, 16 S.W.3d 146, 147 (Tex.App.--Beaumont 2000, no pet.), for the proposition that a turn only occurs when a vehicle changes direction at a 90-degree angle. In *Trahan,* the Beaumont Court of Appeals commented that "a ninety degree turn is exactly the type of turn contemplated" by the Transportation Code. *Id.* However, the fact that the arc at which Appellant's vehicle traveled was not precisely 90 degrees is irrelevant to the question of whether Appellant turned under statute. *Reha v. State*, 99 S.W.3d 373, 376 (Tex.App.--Corpus Christi 2003, no pet.); *Krug v. State*, 86 S.W.3d 764, 766–67 (Tex.App.-- El Paso 2002, pet. ref'd). Further, the Beaumont Court of Appeals has recognized that its comment in *Trahan* about ninety degree angles was dicta, and "that a turn need not be ninety degrees to require a signal." *Kelly*, 413 S.W.3d at 171.

We will not wade into the debate about how narrow an angle must be before it becomes apparent that one road at a junction is not a turn but actually the "main road" through which the normal flow of traffic passes. On the evidence presented, we see two equally worn paths diverging in separate directions at a stop sign, with no indication that the flow of northeast-bound traffic on Vinson Road tends to go either way as a matter of course. As such, we find that Appellant's leftward motion onto FM 544 following a complete stop at a Y-shaped intersection that presented an election of two potential, equally-travelled routes constituted a change in direction, rendering it a "turn" as contemplated under the Transportation Code.

As for Appellant's argument that he did not have to signal a turn at that intersection because he was alone on a "back country road" shortly before midnight, we find it to be without merit. Although a prior 1970's version of the Transportation Code required a signal only if other

7

traffic would be affected by the driver's movement, the statute has since been amended to eliminate that exception. *See Mahaffey*, 316 S.W.3d at 642 n.46. "The plain language of the [current] statute requires the driver to signal for a turn. It does not include exceptions for those situations in which no one is behind the driver or there is only one direction to turn." *Williams v. State*, No. 05-02-00314-CR, 2002 WL 31521373, at *2 (Tex.App.--Dallas Nov. 14, 2002, pet. ref'd)(not designated for publication). Appellant had a duty to signal 100 feet before the intersection as a matter of law, regardless of surrounding road conditions.

Issues One and Two are overruled.

### *Credibility of Officer Testimony*

We next address the issue of whether Appellant complied with his duty to signal at the intersection. In Issue Three, Appellant challenges the trial court's adverse finding on the issue of signal usage. Appellant concedes that he failed to signal a turn using his blinker, but maintains that he did properly signal a turn using his hand, which he is accustomed to doing as an "avid bicyclist." The State likewise concedes that a driver may properly use a hand signal to comply with Section 545.104's signaling requirement, *see* TEX.TRANSP.CODE ANN. § 545.106(a), but it contends that the trial court was free to resolve conflicting testimony about whether Appellant actually used a proper hand signal against Appellant, even though Sgt. Henderson's view of the 100-foot strip leading up to the Vinson Road stop sign at night was partially obscured by trees. We agree with the State.

"Appellate courts afford almost total deference to the trial judge's determination of facts (if those facts are supported by the record) when they review a suppression ruling." *Duran*, 396 S.W.3d at 570. Here, the issue of whether Appellant used a signal turns on whether the trial court believed Sgt. Henderson's testimony that he could see enough of Appellant's approach to

identify a traffic violation, despite the obstruction and low lighting. The trial court explicitly stated that it found Sgt. Henderson to be a credible witness and that his testimony was believable. It also found that Sgt. Henderson had a "clear view" of Appellant's approach to the stop sign, and that Appellant failed to signal the turn. Because this issue is one involving credibility and demeanor, we defer to the trial court's fact-finding and find that it did not abuse its discretion.

Issue Three is overruled. We affirm Appellant's conviction.


_/s/ Yvonne T. Rodriguez_____

June 30, 2014                          YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

9