

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00409-CR

CARMELO RAMIREZ PONCE                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 52,098-C

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Carmelo Ramirez Ponce of credit card abuse against the elderly, a third-degree felony,[2] and assessed his punishment at thirty years' confinement as a habitual offender. The trial court sentenced him

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 32.31(a)–(b), (d) (West 2011).

accordingly. Appellant brings a single issue, contending that the trial court erred by failing to suppress the evidence seized pursuant to the police's "obtaining a search warrant that failed to establish probable cause for the premises searched." Appellant does not challenge the sufficiency of the evidence of guilt but asks this court to "set aside the jury's verdict on punishment and order a new trial." Because we hold that the trial court did not err by denying Appellant's motion to suppress, we affirm the trial court's judgment.

**Brief Facts**

On October 2, 2010, Complainant, an 88-year-old man, reported that his cell phone, wallet, and credit cards were missing from his house. He checked his bill for fraudulent credit card charges and reported that two unfamiliar charges on his Chase MasterCard had been made. The suspicious charges were made on September 29 and September 30, 2010. Both charges were for fuel at Taylor's Convenience Store in Electra. Video surveillance footage from security cameras at the convenience store shows Appellant and his father buying gas on both dates, although it cannot be determined from the video who actually swiped the card. The Electra Police Department secured two search and arrest warrants on October 8, 2010, one for Appellant and Appellant's house and one for his father and his father's house. Appellant was found at his father's house. Nothing was found in Appellant's house, but Complainant's wallet and Fina credit card were found at Appellant's father's house. There was no evidence that the Chase card was ever found.

**Probable Cause for Warrants**

Appellant argues that the trial court erred by denying his motion to suppress the evidence seized pursuant to the two search warrants because the supporting affidavits did not provide probable cause to justify the warrants. He contends that there was no probable cause because the information in the affidavits was stale and insufficient to explain why the officers believed the missing items would be found on the premises searched. He raises no constitutional argument but contends that the affidavits supporting the warrants were inadequate under article 18.01 of the code of criminal procedure.[3]

We note that although it was reasonable to infer from the affidavits that the stolen items would probably be found in one or both of the houses, the arrest portion of the warrants was not dependent on the location of the stolen cell phone, wallet, and credit cards. The officers were authorized to enter the men's homes to execute the arrest warrants regardless of the location of the evidence.[4] Indeed, the officers found the stolen wallet and Fina credit card in the house in which they arrested Appellant, the West Franklin address.

The Texas Court of Criminal Appeals has often addressed the issues of staleness and probable cause and instructs us,

---

[3] *See* Tex. Code Crim. Proc. Ann. art. 18.01 (West 2015).

[4] *See Green v. State*, 78 S.W.3d 604, 611 (Tex. App.—Fort Worth 2002, no pet.).

3

[I]n a seminal 1932 case, we first held that an affidavit is inadequate if it fails to disclose facts which would enable the magistrate to ascertain from the affidavit that event upon which the probable cause was founded was not so remote as to render it ineffective.

Affidavits are to be read realistically and with common sense, and reasonable inferences may be drawn from the facts and circumstances set out within the four corners of the affidavit. But there must be sufficient facts within the affidavit to support a probable-cause finding that the evidence is still available and in the same location. We agree that the proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. No hard-and-fast rule sets the outer limit of time between stopping an apparently intoxicated driver and the existence of probable cause that evidence of intoxication will still be found within that person's blood. The ultimate criteria in determining the evaporation of probable cause are not found in case law, but in reason and common sense. The hare and the tortoise do not disappear over the hill at the same speed. The likelihood that the evidence sought is still available and in the same place is a function, not just of the watch or the calendar, but of the particular variables in the case:

(1) the type of crime—short-term intoxication versus long-term criminal enterprise or conspiracy;

(2) the suspect—nomadic traveler, entrenched resident, or established ongoing businessman;

(3) the item to be seized—perishable and easily transferred (evanescent alcohol, a single marijuana cigarette) or of enduring utility to its holder (a bank vault filled with deeds, a meth lab, or a graveyard corpse); and

(4) the place to be searched—a mere criminal forum of convenience or secure operational base.

(T)he fundamental point is that when the facts put forward to establish probable cause show only a single, nonrecurring crime occurring on a specific occasion, the question to be considered is

4

how long after that time or date evidence of that single crime can be expected to remain at the scene.[5]

In addressing the issue of staleness, the Texas Court of Criminal Appeals has also stated,

> [W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant. Other federal circuits have held that the nature of the activity must be considered, and that, in appropriate circumstances, years could pass without information becoming stale. In *United States v. Greene*, the Sixth Circuit explained that "(e)vidence of ongoing criminal activity will generally defeat a claim of staleness." And, according to that court, "where the criminal activity occurred in a 'secure operational base,' the passage of time becomes less significant."[6]

The affidavits in the case now before this court reflect that the investigating police officer was familiar with both Appellant and his father. They lived in houses, not a motel or even an apartment. Nothing in the affidavits indicates that they were in any way transient. The credit cards were reusable and not perishable. Nor would they dissipate, although they would not be usable once the issuing banks were notified that they had been stolen. The men had already used one of the cards on two separate days—September 29 and 30. The warrants were secured October 8. The magistrate could have reasonably inferred that the affidavits described men whose houses were their "secure

---

[5] *Crider v. State*, 352 S.W.3d 704, 707–08 (Tex. Crim. App. 2011) (citations and internal quotation marks omitted).

[6] *Jones v. State*, 364 S.W.3d 854, 861 (Tex. Crim. App.) (citations and selected internal quotation marks omitted), *cert. denied*, 133 S. Ct. 370 (2012).

5

operational bases" and that Appellant and his father were "entrenched residents" of Electra. It was not unreasonable for the magistrate to conclude from the affidavits that there was probable cause to believe that the property would still be in possession of Appellant and his father.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[7] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[8] Applying this standard of review, we hold that the trial court did not err in overruling Appellant's motion to suppress on the ground of staleness or of lack of probable cause.

**Alternatively, No Harm**

Even if the trial court had erred by denying Appellant's pretrial motion to suppress, Appellant raises no constitutional challenge on appeal. Rule 44.2(b) of the appellate rules of procedure would therefore be applicable.[9] "Any . . . error,

---

[7]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[8]*Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

[9]Tex. R. App. P. 44.2(b).

defect, irregularity, or variance that does not affect substantial rights must be disregarded."[10]  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[11]  Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[12]

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.[13]  We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable.[14]

Absent the challenged evidence, the jury still saw Appellant and his father, as recorded by the convenience store's security cameras, purchasing gasoline with Complainant's stolen credit card.  Further, Appellant stipulated to the

---

[10]*Id.*

[11]*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

[12]*Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

[13]*Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

[14]*Id.* at 355–56.

enhancement allegations. The range of punishment for a third-degree felony enhanced by two prior felony convictions is from a low of twenty-five years' confinement to confinement for 99 years or life.[15] The jury assessed Appellant's sentence at only five years above the minimum lawful period of confinement as a habitual offender, and the trial court sentenced him accordingly. We conclude that, in the context of the entire case against Appellant, even if the trial court had erred in denying Appellant's motion to suppress and admitting the challenged evidence, such error did not have a substantial or injurious effect on the jury's punishment verdict and did not affect Appellant's substantial rights.[16] Thus, we would disregard the error, if any.[17]

**Conclusion**

We overrule Appellant's sole issue and affirm the trial court's judgment.

---

[15]Tex. Penal Code Ann. § 12.42(d) (West Supp. 2014).

[16]*See King*, 953 S.W.2d at 271.

[17]*See* Tex. R. App. P. 44.2(b).

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 23, 2015