# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00619-CR

---

### Edward Raynard Lampkin, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE COMAL COURT AT LAW NO. 3 OF COMAL COUNTY
### NO. 2017CR0366, THE HONORABLE DEBORAH WIGINGTON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found Edward Raynard Lampkin guilty of driving while intoxicated with a previous conviction. Tex. Penal Code §§ 12.43, 49.04(d). The court assessed sentence at one year in prison, suspended for a two-year term of community supervision with a 30-day term of confinement in county jail as a condition of probation. Lampkin contends that the trial court erred by denying his request for instructed verdict based on the lack of evidence as to his "last driving event" before his arrest. We will affirm the judgment.

## BACKGROUND

A caller to Schertz 911[1] on July 27, 2016, reported seeing a vehicle lose control and hit a wall alongside the "fast lane" on northbound Interstate Highway 35 (IH-35) between mile

---

[1] Nicole Kuhlmann, the Schertz Police Department custodian of records for 911 calls testified that the call was made July 27, 2016, but did not testify as to a specific time. The recording does not include a time or identify the caller.

markers 181 and 182. The caller said she last saw the vehicle on the side of the road. The 911 operator said she would get officers and emergency medical services "rolling."

Schertz PD officer Roxanne Cardona testified that she was dispatched at 11:11 p.m. on July 27, 2016, to the 23000 block of IH-35 north and saw an unoccupied green Lincoln facing the wrong direction in a grassy area. Looking for any former occupant of that vehicle, Cardona saw Lampkin walking near the 24000 block of the northbound lanes of IH-35. Cardona testified that Lampkin's eyes were red and glassy, which is an indication of intoxication. Lampkin initially denied being in an accident, but dispatch informed Cardona that the Lincoln was registered to Lampkin. After Cardona confronted him with the registration, Lampkin admitted that he had lost control of the vehicle. While he talked to her, Cardona noticed a strong odor of alcoholic beverage on his breath—another indicator of intoxication. She asked Lampkin for his consent to take him back to the accident scene and he agreed.

At the accident scene, Lampkin admitted to driving the vehicle and said he hit a rock and lost control of the vehicle. Cardona noted that the passenger-side airbags of the vehicle deployed, but the driver's side did not. Cardona asked if Lampkin had anything to drink. At first he said two drinks, then said three Bud Light beers. She testified that Lampkin did not appear injured or physically disabled. Cardona asked if Lampkin would consent to taking field sobriety tests. She administered the horizontal-gaze nystagmus (HGN) test and found six of eight clues of intoxication. She said he had trouble keeping his head still and swayed while she attempted to conduct the test. She explained the walk-and-turn test to Lampkin but did not administer it because Lampkin did not want to continue because he felt that his weight affected his balance.

Cardona testified that she believed Lampkin was intoxicated because he admitted driving the vehicle and had the accident, showed six of eight clues on the HGN test, and had slurred

2

speech, red and bloodshot eyes, trouble maintaining his balance, and the strong odor of alcoholic beverage emitting from his breath. She arrested him and read him the statutory warnings including the DIC-24, which concerns the right to refuse or provide breath or blood samples along with the consequence of refusal. Lampkin did not agree to provide a sample, so she got a warrant to obtain a blood sample. The blood-alcohol kit laboratory submission form states that the blood sample was collected on July 28, 2016 at 2:34 a.m.

Nick Pierce, a forensic toxicologist with the Department of Public Safety, testified regarding blood-alcohol content test results. He testified that Lampkin's blood contained .159 grams of alcohol per 100 milliliters of blood, over the legal definition of intoxication of .08 grams of alcohol per 100 milliliters of blood with an uncertainty value of plus or minus .008. Pierce testified that alcohol consumed could take between fifteen minutes (on an empty stomach) to as much as an hour (with food in the stomach) to enter the bloodstream and would be eliminated at a rate of .01 to .03 per hour, with an average of .02 per hour.

Lampkin moved for an instructed verdict, the trial court denied the motion, the defense rested, and the jury found him guilty of driving while intoxicated.

## DISCUSSION

Lampkin asserts that the trial court erred by denying his motion for instructed verdict. We review a challenge to a trial court's denial of a motion for instructed verdict as we would a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

3

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Said another way, evidence is insufficient only if, even when considering all the evidence in the light most favorable to the verdict, no rational factfinder could have found each essential element of the charged offense beyond a reasonable doubt. *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899. We may not substitute our judgment for that of the jury by reevaluating the weight or credibility of the evidence, but must defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi*, 330 S.W.3d at 638.

Lampkin argues that there was no evidence from which to ascertain the time he was driving and that there is no evidence from which to logically infer how that unknown time of driving relates to when Cardona observed him. Thus, Lampkin argues, his signs of intoxication when he encountered Cardona, took the field-sobriety tests, and had his blood drawn had no relevance shown to the undetermined time of driving.

Lampkin relies on *Crider v. State* in which the Court of Criminal Appeals held that an affidavit in support of a search warrant to draw blood that did not state the time of the offense did not establish probable cause that the blood would contain evidence of intoxication because neither the affidavit nor surrounding circumstances sufficiently limited the range of possible times of the offense. 352 S.W.3d 704, 710-11 (Tex. Crim. App. 2011). The officer stated in his affidavit that he stopped Crider on June 6, 2008, without stating a time of the encounter and no allegation in the affidavit (i.e., whether the sun had set) helped inform the magistrate of when the offense

occurred. *Id.* at 710. The warrant, signed at 1:07 a.m. the day after the stop thus allowed for a possible 25-hour gap between the time of the stop and the time of the affidavit. The Court of Criminal Appeals rejected the State's argument—accepted by the court of appeals—that the arresting officer must have performed an unbroken chain or uninterrupted course of action between stopping appellant, determining that he was intoxicated, arresting him, writing the affidavit, and obtaining the warrant. *Id.* at 711. The Court of Criminal Appeals distinguished between permissibly drawing inferences from information in the affidavit and reading material information into the affidavit. *Id.*

The *Crider* court distinguished that opinion from its opinion in *State v. Jordan*. *Id.* (citing *State v. Jordan*, 342 S.W.3d 565, 571 (Tex. Crim. App. 2011)). In *Jordan*, the affidavit did not state when the offense occurred, but the warrant issued at 3:54 a.m. on the same day as the alleged offense, limiting the time between offense and warrant to less than four hours. *Jordan*, 342 S.W.3d at 568. The Court of Criminal Appeals held that, given the signs of intoxication alleged and the rate of dissipation of alcohol in the bloodstream, the magistrate could reasonably have believed that Jordan's blood would contain evidence of intoxication up to four hours later. *Id.* at 572.

Here, though no evidence or witness stated when the 911 call occurred, the record includes evidence from which reasonable inferences can be drawn to connect the evidence of Lampkin's intoxication to the time Lampkin drove. The 911 caller said she had witnessed a one-vehicle accident and that "right now" the car was on the shoulder. The caller expressed concern that someone in the vehicle could be injured. The 911 operator closed the recorded conversation by saying, "Allright ma'am, we're gonna go ahead and get, um, get officers as well as EMS rolling, okay?" While there was no explicit evidence of how quickly the operator

5

dispatched officers, a jury could reasonably infer that dispatch occurred quickly because Cardona said dispatch described it as a "major accident" and because of the concern for the occupants' well-being. Cardona testified that she was dispatched at 11:11 p.m. She found a vehicle on the roadside in the 23000 block of IH-35 and found Lampkin walking approximately on the northbound lanes around the 24000 block of IH-35. Viewed in the light most favorable to the verdict, this evidence and reasonable inferences from it permitted a rational trier of fact to find that Cardona encountered Lampkin shortly after the accident. He admitted consuming alcohol, emitted a strong odor of alcoholic beverage on his breath, and exhibited signs of intoxication including bloodshot eyes, slurred speech, swaying while undergoing the HGN test, and six of eight clues of intoxication on the HGN test. The blood draw showing intoxication was taken less than three-and-a-half hours after Cardona arrived—within the scope of the temporal relevance window found in *Jordan*. *See* 342 S.W.3d at 572. The evidence and testimony and reasonable inferences therefrom permitted a rational factfinder to find a link between when Lampkin's intoxication level when he drove the vehicle, when he encountered Cardona, and when his blood was drawn at the hospital.

A person commits the offense of driving while intoxicated when that person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code § 49.04(a). If the evidence shows that a person's blood specimen had an alcohol concentration level of .15 or more at the time the analysis was performed, the offense is a Class A misdemeanor. *Id.* § 49.04(d).

Lampkin admitted driving the vehicle that he owned and losing control of it on IH-35. The car was found in an undisputedly public place on IH-35 and the wreck was reported to have occurred on that roadway. Lampkin exhibited signs of intoxication, the test showed that he had a blood-alcohol level of .159 three hours and twenty-three minutes after Cardona was dispatched, and the jury could reasonably infer that he was intoxicated at the time of the accident.

6

The record contains legally sufficient evidence to support finding each element of the offense for which he was convicted.  The trial court did not err by denying the motion for instructed verdict.

We overrule Lampkin's sole issue on appeal.

## CONCLUSION

We affirm the judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   July 25, 2023

Do Not Publish