In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00060-CR
_____

DRAKE PAUL RENTROP, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4
Montgomery County, Texas
Trial Cause No. 13-284397

## MEMORANDUM OPINION

Drake Paul Rentrop (Rentrop) was indicted for driving while intoxicated. Rentrop filed a motion to suppress and the trial court denied the motion. Thereafter, Rentrop pleaded guilty to the offense of driving while intoxicated. The trial court assessed his punishment at confinement for 180 days and a $1,000 fine, but suspended the imposition of the jail sentence and placed Rentrop on community supervision for one year. In two appellate issues Rentrop argues that

1

the trial court (1) erred in not suppressing the blood alcohol test evidence obtained by a warrant that was issued in reliance upon an affidavit that did not specify the month of the events described and sworn to by the affiant, and (2) abused its discretion in finding that the deputy observed that defendant's driver's side headlight was not illuminated in violation of the traffic code, and in finding there was reasonable suspicion that a traffic violation had occurred. We affirm.

MOTION TO SUPPRESS

Rentrop filed a motion to suppress the evidence seized as a result of his arrest and search. In his motion, he argued that the arrest and search were "without valid warrant, reasonable suspicion, or probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 and Chapter 14 of the Texas Code of Criminal Procedure." Rentrop further argued that any statements made and acts performed after the seizure were fruits of the illegal arrest and search and inadmissible because the State did not articulate any reasonable suspicion that any actual law was being or was about to be broken, and that Rentrop "is unable to find any law which defines one lit headlight being dimmer than the other as a violation where no light was too bright and no unsafe condition is caused by this condition." Rentrop complained that the search warrant that was issued relied on an affidavit

2

that failed to state the month when the information used as foundation for probable cause was obtained and that "[n]o controlling cases allow going outside the four corners of the affidavit in order to correct clerical errors where information is simply not there for whatever reason."

SUPPRESSION HEARING

Deputy Jesse Bollinger with the Montgomery County Constables Office testified on behalf of the State at the suppression hearing. Deputy Bollinger explained that he was on duty in a marked patrol car on the night of December 23, 2012, in Montgomery County. Deputy Bollinger's vehicle was stationary when he saw a vehicle driving toward him with a "headlight being out on the vehicle." He explained that it was "pretty obvious" that the driver of the vehicle, Rentrop, was committing a violation of the Transportation Code because the vehicle had "only one working headlight." According to Deputy Bollinger, Rentrop's vehicle caught the Deputy's attention because the light projecting from Rentrop's vehicle was noticeably different from another vehicle traveling in front of Rentrop. A videotaped recording from Deputy Bollinger's patrol car was played at the suppression hearing. Deputy Bollinger agreed that one can see something yellow on the front driver's side of Rentrop's vehicle and that a vehicle's headlight is

3

made of reflective material, but he insisted in his testimony that the driver's side headlight "was not operational."

Deputy Bollinger further explained that he initiated a traffic stop of Rentrop, and that in the video recording the only light coming from the driver's side "would be from the auxiliary parking light of the turn signal or whatever you want to call it. Not the actual[] head lamp." Rentrop was in the driver's seat, and there was a passenger in the vehicle with him. The Deputy asked Rentrop if he knew his headlight was out. Because of the immediate smell of alcohol coming from inside the vehicle, Deputy Bollinger asked Rentrop where he had been and Rentrop told Deputy Bollinger that he had been to a bar. When Deputy Bollinger asked Rentrop to step out of the vehicle, Deputy Bollinger continued to smell alcohol from Rentrop's person, and the Deputy administered standardized field sobriety tests. According to Deputy Bollinger, Rentrop exhibited six clues of intoxication on the horizontal gaze nystagmus test, four clues of intoxication on the walk-and-turn test, and three clues of intoxication on the one-leg stand test. Based on Bollinger's training and experience, he concluded Rentrop was intoxicated and the Deputy then arrested Rentrop for driving while intoxicated.

Deputy Bollinger stated that he provided Rentrop with a statutory warning and Rentrop refused to provide a breath or a blood sample. The Deputy then

4

transported Rentrop to the Montgomery County Jail and then drove to the district attorney's office to get assistance with the warrant for a blood draw.

A "Blood Withdrawal Procedure Form," an "Affidavit for Search Warrant and Magistration," a "Search Warrant," an "Order for Assistance in Execution of Search Warrant," and the "Return and Inventory" were offered and admitted into evidence. Each document was signed and dated December 23, 2012. According to Deputy Bollinger, the warrant was drawn up on the 23rd day of December of 2012, about an hour after he stopped Rentrop and completed the investigation. The Affidavit for Search Warrant and Magistration that Bollinger filled out stated that he stopped Rentrop for a defective headlight. Bollinger testified that he made a typographical error in the body of the affidavit by mistakenly omitting the month for the date of his observations in support of the search warrant. Page two of the Affidavit stated his observations supporting a warrant for a blood draw were made on the "23rd day of __, 2012." Nevertheless Bollinger signed the Affidavit on the same date as evidenced by the notarial declaration on page six of the same document depicting that it was notarized on December 23, 2012. The Order for Assistance in Execution of Search Warrant and the Search Warrant both reflect that each was signed by the judge on the "23rd day of Dec., 2012, at 4:21 o'clock A.M.[,]" the same date Bollinger testified he received the signed warrant.

Bollinger further explained that the Return and Inventory shows his signature and that it was done on December 23, 2012, and that the Affidavit of Person Who Withdrew Blood shows it was made on December 23, 2012. Deputy Bollinger testified that the Judge that signed the warrant relied solely on the written information provided to the Judge and the Judge did not call Bollinger and ask him what month he made the observations noted in Bollinger's affidavit.

Rentrop testified that the vehicle he was driving was his girlfriend's and he acknowledged that he had been drinking that night; but he said that he was driving because his girlfriend was intoxicated. He explained that to his knowledge the front driver's side headlight was working because the "next day after I came home from getting picked up from jail. . . . [W]e checked the headlight. It was not burning very brightly, but it was turning on."

The trial court denied the motion to suppress and entered findings of fact and conclusions of law. The findings of fact pertinent to the issues on appeal include that Bollinger observed that the driver's side headlight of the vehicle was not illuminated, that Bollinger's affidavit for search warrant for Rentrop's blood sample detailed Bollinger's observations and included that he conducted the stop at approximately 2:00 a.m., that the affidavit listed the date of the traffic stop but did not specify the month in which the traffic stop occurred, that Bollinger swore to the

6

veracity of the affidavit on December 23, 2012, and that the Judge received the affidavit and signed a search warrant at 4:21 a.m. on December 23, 2012. The trial court also found that Bollinger provided credible testimony at the suppression hearing. The trial court issued the following conclusions of law:

> 1. Bollinger's observation that the driver's side headlight was not illuminated provided reasonable suspicion to detain the defendant. *See* Tex. [Transp.] Code Ann. § 547.321 (West 2011); Tex. [Transp.] Code [Ann.] § 547.302 (West 2011).
>
> 2. When reviewing a search warrant affidavit at approximately 4:00 AM on the 23[rd] day of December, the reviewing magistrate could reasonably infer that a traffic stop that occurred at 2:00 AM on the 23[rd] day of an unspecified month occurred the same day, and need not have assumed that the traffic stop could have occurred precisely one or more months earlier on the 23rd day of some other month of the same year. *See State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011); *Lane v. State*, 971 S.W.2d 748, 753 (Tex. App.—Dallas 1998, pet. ref'd).

Rentrop pleaded guilty to driving while intoxicated. The trial court signed its certification of Rentrop's right of appeal, stating that Rentrop may appeal matters raised by written motion filed and ruled on before trial and not withdrawn or waived. Rentrop filed this appeal of the denial of his motion to suppress.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.*

7

We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We must uphold the trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

CHALLENGE TO AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

In his first issue, appellant argues that the trial court erred in not suppressing blood test evidence obtained by a warrant that was issued in reliance on an affidavit that did not specify the month of events sworn to by the affiant. Rentrop contends that the trial court cited "no other facts from the four corners of the affidavit to support an inference that allow[s] one to conclude what the actual date was when Deputy Bollinger made his observations referred to in the affidavit."

Rentrop maintains that the affidavit, read literally, reads that the stop occurred on "the 23rd day of 2012," with "some extraneous underline marks." Rentrop contends it would literally mean the stop occurred on January, 23, 2012, and that "[t]he lack of a specific month gives us a window of 12 months during which the contact between Deputy Bollinger and Mr. Rentrop could have occurred based upon the statements within the four corners of the affidavit."

Rentrop argues that *McLain*[1] and *Lane*,[2] the two cases cited by the trial court in concluding that the magistrate could have inferred that the stop occurred on the same day she reviewed the affidavit, are inapplicable here because there are no facts from the four corners of Bollinger's affidavit to support an inference that Bollinger made his observations on December 23, 2012. According to Rentrop, "[o]ne must first before getting a warrant provide facts sufficient to show probable cause to the issuing magistrate," and any defect in an affidavit that fails to support probable cause for a search warrant cannot be cured by testimony at a subsequent hearing on a motion to suppress.

When reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811

---

[1] *State v. McLain*, 337 S.W.3d 268 (Tex. Crim. App. 2011).

[2] *Lane v. State*, 971 S.W.2d 748 (Tex. App.—Dallas 1998, pet. ref'd).

9

(Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . [concluding]' that a search would uncover evidence of wrongdoing[.]" *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)); *see Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010); *Swearingen*, 143 S.W.3d at 811.

Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a "fair probability" that contraband or evidence of a particular crime will be found. *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained therein. *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983). Reviewing courts give great deference to a magistrate's determination of probable cause. *Gates*, 462 U.S. at 236; *Rodriguez*, 232 S.W.3d at 59-60. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (internal quotations omitted).

10

Rentrop contends that *Crider v. State*, 352 S.W.3d 704 (Tex. Crim. App. 2011), precludes a magistrate from "read[ing] material information into an affidavit that does not exist on its face." In *Crider*, a police sergeant executed a search-warrant affidavit on June 7, 2008, stating that he had probable cause to obtain blood from the appellant, whom he had arrested for DWI. 352 S.W.3d at 705-06. The affidavit stated that the sergeant made a traffic stop on June 6, 2008, and that upon making contact with Crider, the sergeant detected a strong odor of alcoholic beverage and noted that Crider's eyes were bloodshot and speech "thick-tongued." *Id.* at 706. In the affidavit, the officer stated the clues he observed during field sobriety tests, and based on his observations, he believed Crider was driving while intoxicated. *Id.* Based on the affidavit, the magistrate issued a search warrant at 1:07 a.m. on June 7, 2008. *Id.*

Crider argued in his motion to suppress the blood alcohol evidence that, because the sergeant failed to provide in the affidavit the time that he observed Crider driving while intoxicated, the magistrate could not have determined whether there was probable cause because of the dissipation of alcohol from the blood. *Id.* The trial court denied the motion to suppress and a jury convicted Crider of DWI. *Id.* Crider appealed, arguing that the search-warrant affidavit failed to establish "recent" probable cause. *Id.* at 706-07. The court of appeals affirmed the trial

court's denial of the motion to suppress. *Id.* The Court of Criminal Appeals reversed. The Court explained that *Crider* was the "bookend" case to *State v. Jordan*, 342 S.W.3d 565 (Tex. Crim. App. 2011), wherein the Court of Criminal Appeals held that the search-warrant affidavit for blood in a DWI case established probable cause even though the affidavit did not explicitly state when the officer stopped the defendant because it was obvious from the context. *Crider*, 352 S.W.3d at 705.

The Court in *Crider* distinguished *Jordan*, explaining that in *Crider* nothing in the "four corners" of the affidavit suggested what time gap existed between the last movement of driving and the moment the magistrate signed the warrant, and that the gap could have been up to twenty-five hours. *Crider*, 352 S.W.3d at 710. As stated by the *Crider* Court, "[t]he longer the time gap between the initial stop and the eventual signing of the warrant, the less likely that evidence of intoxication would still be found in appellant's blood." *Id.* In reversing the judgment of the court of appeals and remanding the case to the trial court, the Court of Criminal Appeals further concluded:

> It is one thing to draw reasonable inferences from information clearly set forth within the four corners of an affidavit . . . [but it] is quite another matter to read material information into an affidavit that does not otherwise appear on its face." There is simply no fact in this affidavit that would give rise to a reasonable inference that Sgt. Henderson performed an "unbroken chain" of actions that connected

12

his detention of appellant to the signing of the warrant within a sufficiently short time frame that evidence of intoxication would still be in appellant's blood.

Under the totality-of-the-circumstances test and giving due regard to all reasonable inferences that can be drawn from the stated facts, the affidavit in this case, unlike the one in *Jordan*, does not contain sufficient facts within its four corners to establish probable cause that evidence of intoxication would be found in appellant's blood at the time the search warrant was issued.

*Id.* at 711 (footnotes and citations omitted).

In *Jordan*, the police officer presented his search-warrant affidavit to the magistrate on June 6, 2008. 342 S.W.3d at 567. The affidavit stated that Jordan "committed the offense of Driving While Intoxicated on June 6, 2008, and then described the driving and intoxication that constituted elements of that offense[,]" but it did not state what time Jordan was stopped. *Id.* at 570. The magistrate signed the warrant at 3:54 a.m. on June 6, 2008. *Id.* at 567. The Court noted that this fact was necessary to determine the probability that evidence of an offense would be found in Jordan's blood at the time the warrant issued. *Id.* at 570. The Court held that although the officer failed to include the time that he stopped or arrested Jordan, that omission was not fatal because the officer stated Jordan committed the offense on June 6th, so necessarily there was less than a four-hour interval between the initial stop and the signing of the warrant. *Id.* at 570-71. Therefore, it was unlikely that all evidence of Jordan's intoxication had dissipated from Jordan's

13

blood in that four-hour period given the intoxication symptoms noted in the affidavit. *Id.* at 571-72.

As in *Jordan*, the omission of the month in Officer Bollinger's affidavit is not fatal. Applying the totality-of-the-circumstances test and giving due regard to all reasonable inferences that can be drawn from the stated facts in the Bollinger affidavit, we conclude that the affidavit contains sufficient facts within its four corners from which the magistrate could have determined there was probable cause that evidence of intoxication would be found in Rentrop's blood at the time the warrant was issued. The trial court found that Bollinger swore to the veracity of the affidavit on December 23, 2012 and that the Judge signed a search warrant at 4:21 a.m. on December 23, 2012. Bollinger signed the affidavit and under his signature there is a statement by the notary that the affidavit was "subscribed and sworn to before me on this 23[rd] day of December, 2012[.]" We defer to all reasonable inferences that the Judge could have made, and give great deference to a magistrate's determination of probable cause. The Judge had a substantial basis for determining probable cause did exist under the totality of the circumstances. The Judge could have reasonably inferred from the four corners of Deputy Bollinger's affidavit that Bollinger initiated the traffic stop on December 23, 2012, at 2:00 a.m. There was less than a three-hour interval between the initial stop and signing the

14

warrant. Therefore, it was unlikely that all evidence of Rentrop's intoxication had dissipated from Rentrop's blood in that period given the intoxication symptoms noted in the affidavit. *Id.* We conclude that the trial court did not err in denying the motion to suppress the blood test evidence. We overrule Rentrop's first issue.

REASONABLE SUSPICION TO JUSTIFY THE STOP

In his second issue on appeal, Rentrop contends that the trial court abused its discretion in finding that Deputy Bollinger observed the appellant's driver's side headlight not illuminated in violation of the traffic code, and therefore, Deputy Bollinger lacked reasonable suspicion to justify the stop. We disagree.

Section 547.321 of the Texas Transportation Code requires a motor vehicle to be "equipped with at least two headlamps." Tex. Transp. Code Ann. § 547.321 (West 2011). Section 547.302 of the Texas Transportation Code provides that "[a] vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle: (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead." *Id.* § 547.302(a) (West 2011). Rentrop's stop occurred at nighttime.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To suppress evidence because of an alleged Fourth

15

Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this initial burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Once the defendant has made this preliminary showing, the burden of proof shifts to the State. The State meets its burden by establishing that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

The Supreme Court has held that a warrantless detention is reasonable under the Fourth Amendment if the government agent reasonably suspects a person of engaging in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492-93.

If an officer has a reasonable basis supported by articulable facts for suspecting that a person has committed a traffic offense, the officer may legally

16

initiate a traffic stop. *See Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.). The State is not required to show that a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress. *Fisher*, 56 S.W.3d at 163 (citing *Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd)).

Because it is undisputed that Deputy Bollinger did not have a warrant when he stopped Rentrop, we examine whether the State met its burden in showing the reasonableness of Deputy Bollinger's detention of Rentrop. *See Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Rentrop argues that Deputy Bollinger did not have reasonable suspicion to initiate the traffic stop because the video recording of the stop shows that the headlight was illuminated, and during the stop Deputy Bollinger did not move to a position "to verify that the light was out as opposed to just dim and illuminated." The question here is not whether Rentrop committed a traffic violation; rather, the question is whether Deputy Bollinger had reasonable suspicion to initiate a traffic stop of Rentrop for a traffic offense. *See Fisher*, 56 S.W.3d at 163.

Deputy Bollinger testified that when the vehicle Rentrop was driving passed Bollinger with a "headlight being out on the vehicle," Bollinger believed that

17

Rentrop, the driver of the vehicle, was committing a violation of the Transportation Code because the vehicle had "only one working headlight." When the video recording of the stop was admitted into evidence and played at the motion to suppress hearing, Bollinger agreed that something yellow on the driver's side can be seen in the video and that a vehicle's headlight is made of reflective material; but he testified that the driver's side headlight "was not operational." Furthermore, the testimony of Rentrop indicated that the day after he was stopped that the driver's side headlight was not burning very brightly. A reviewing court must give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of the credibility and demeanor of a witness. *Turrubiate*, 399 S.W.3d at 150. The trial court's findings of fact included that Bollinger observed that the driver's side headlight of the vehicle was not illuminated, and that Bollinger provided credible testimony at the suppression hearing. On the record before us, we conclude that the trial court did not abuse its discretion in finding that Bollinger observed that the driver's side headlight of the vehicle was not illuminated; such finding is within the zone of reasonable disagreement. *See Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003) (An abuse of discretion occurs only when the decision of the trial court falls outside the zone of reasonable disagreement.). Furthermore, we

18

conclude that the State met its burden and it established that Bollinger had a reasonable suspicion to justify the stop, and the stop did not violate the Fourth Amendment. *See Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977). Rentrop's second issue is overruled.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered March 4, 2015
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

19